# Jack *versus* Morrison.

*Parol contract to pay debt of another, when not enforced.—Contract not inferred from mere endorsement of negotiable paper.*

1. A parol contract of guaranty that a third party will pay his note, the amount being over $50, cannot be enforced because of the Act of Assembly of 29th April 1855, requiring an agreement or memorandum in writing or a note thereof, to bind one to answer for the debt of another of that amount.

2. The defendant's endorsement, after the plaintiff's, on the note, is not such a note in writing, for it imports only an endorsement of commercial paper, and makes him liable as an endorser, only to subsequent, and not to prior, holders of the paper.

· 3. But where the drawer of the note had placed other notes in the hands of the endorser, to indemnify him against this very debt, from which a certain sum was realized, *held*, that the plaintiff, the holder of the note, might recover that sum on the common money counts.

ERROR to the Common Pleas of *Allegheny county.*

This was an action of *assumpsit* by Hugh Morrison against James P. Jack. The plaintiff claimed to recover on a note, dated June 9th 1857, by Robert Wray to the order of Hugh Morrison, for $510, payable in two years from date, with interest. Endorsed, Hugh Morrison, James P. Jack, James Verner.

The declaration charged James P. Jack upon a parol contract of guaranty, and that he had endorsed the note in pursuance of that contract. On the trial of the cause the common counts were added.

After giving the note in evidence, the plaintiff called John O. S. Golden, and offered to prove by him,

1. That the defendant endorsed this note for the purpose of obtaining credit for Robert Wray with the plaintiff, and that plaintiff loaned the amount of the said note on the faith of defendant's endorsement.

2. That the evidence offered, being parol, cannot be given in evidence, being in direct violation of the statute of 1855, relating to frauds and perjuries. This was objected to as not evidence under the pleadings, but the objection was overruled by the court.

Witness then testified: " Some time after the note in this case was given, I had a conversation with Mr. Robert Wray and Mr. Jack. Mr. Jack was present. Mr. Wray told me that he had

12 WR.—8

[Jack *v.* Morrison.]

got from Mr. Morrison something over $500—I think it was in the shape of a bond—a bond to a railroad company. Cannot say certainly what kind of bond, but think it was a railroad bond. Said he got it on the faith of an endorsement of Mr. Jack. Stated that the note was originally drawn to the order of Mr. Jack, and either given to, or offered to, Mr. Morrison, and he objected to it, because it did not show him in the transaction. Mr. Wray said they saw the point in the note, and drew it to suit Mr. Morrison. It was a matter of some little merriment at the time. Mr. Wray told Mr. Jack that he proposed selling Mr. Morrison, or Mr. Morrison's son, some patent rights, and take in this note as part pay, and save Mr. Jack from paying it.

"One other conversation was had in presence of Mr. Jack. Wray then told me that he had given some notes to Mr. Jack, to protect him against the endorsement of the note held by Mr. Morrison. The notes which he said he had given to Jack were received in the sale of his counterfeit detector. I think his expression was that 'he had given Jack the notes to pay the amount he had endorsed for Morrison.' The first conversation was in the fall of the year, and the next was in the spring. I think Wray had nothing in 1859, at the time the note fell due. Think he was insolvent."

Cross-examined: "At the time of the first conversation Mr. Jack was not doing anything specially. I think Wray and I were sitting at the time. I have no doubt Jack heard the whole of the conversation. Wray and I were calling his attention to the facts of the case. The second conversation occurred at the store. Jack was present—close by us. When Wray had told me what disposition he had made of the notes—his having given notes to Jack—he, Jack, assented to the truth of it. The bond was in some way connected with railroad."

Direct: "The amount of note to Morrison was between $500 and $600."

Plaintiff then amended his *narr.* by adding the common counts for money had and received."

F. W. Fehl was then called, who testified as follows:—

"On 18th of January 1859, I bought out the 'National Bank Note and Commercial Reporter' from Mr. Robert Wray. I gave Wray my notes for $2500. They were all paid—some of them in advance. I think one or two of them were renewed—but not the ones James P. Jack had. One note, No. 3, paid to James Jack $200. One note, No. —, paid James Jack $100. One, No. 27, paid James Jack $100. These notes were all with interest from date. All dated January 1859."

Cross-examined: "I have the notes, and know they are paid. I cannot say that I paid the notes to Mr. Jack. I think the

notes were all in bank, and paid there. I think there were some of my notes paid into bank for Dr. Robert Wray, uncle of Robert Wray. I burned all the notes. I believe Mr. Jack had two of the notes in bank in Allegheny.

" I never had any conversation with Jack in reference to these notes."

Plaintiff then rested.

The defendant offered no testimony, but requested the court to instruct the jury "that, under the pleadings and evidence, the plaintiff is not entitled to recover."

" Per Curiam.—We refuse to instruct you as requested on this point. If you find, from the testimony, that the defendant endorsed the note for the purpose of enabling Wray to obtain a loan from the plaintiff, and that the plaintiff made the loan on the faith of defendant's endorsement; and that subsequently Wray placed funds in the hands of defendant, to be applied to payment of the note, we instruct you *pro forma* that the plaintiff is entitled to recover in this suit—reserving for the consideration of the court in banc the question of law, ' whether, under the pleadings and evidence, the plaintiff is entitled to recover,' and if the court should be of the opinion that the plaintiff is entitled to recover, then judgment to be entered in favour of plaintiff on the verdict—if not, judgment to be entered for defendant *non obstante veredicto*." There was a verdict accordingly.

Subsequently the court directed the entry of judgment in favour of the plaintiff on the verdict. The defendant thereupon sued out this writ, averring here that the court below erred,

1. In rendering judgment for the plaintiff on the following reserved question, to wit: whether, under the pleadings and evidence, the plaintiff is entitled to recover.

2. In instructing the jury to find a verdict *pro forma* for the amount of the plaintiff's claim, if they should find, from the evidence, that Jack endorsed the note for the purpose of enabling Wray to obtain a loan from Morrison, the plaintiff, and that the plaintiff made the loan on the faith of Jack's endorsement, and that subsequently Wray placed funds in the hands of defendant to be applied to the payment of the note.

3. In admitting in evidence the testimony of John O. S. Golden, for the purpose stated in plaintiff's offer.

4. In admitting in evidence the notary's certificate for the purpose of proving notice to Jack of the non-payment of the note by Wray.

5. The judgment of the court is erroneous for the reason also that the verdict and judgment is rendered generally on all the counts in the declaration. The first count, being upon the guaranty of Jack, is defective and bad in this, there is no averment in said

[Jack *v.* Morrison.]

declaration that the maker failed to pay the note at maturity, nor that any notice was given to Jack of the non-payment, or that the maker was insolvent at the maturity of the note, nor that there was any consideration for said guaranty.

6. The court also erred in admitting parol testimony to be given in evidence to the jury for the purpose of proving that Jack endorsed the note as guarantor for Wray, such proof being prohibited by the Act of the 26th of April, A. D. 1855, relating to frauds and perjuries; and

7. In not entering judgment for defendant on the reserved question.

*David Reed,* for plaintiff in error.

*Miller* and *McBride,* for defendant.

The opinion of the court was delivered by

WOODWARD, C. J.—The action was by a first against a second endorser of a negotiable note drawn by Robert Wray; but as no action could result to Morrison, the plaintiff, out of that relation, he declared against Jack upon a parol contract of guaranty, and alleged that Jack had endorsed the note in pursuance of that contract. The difficulty in the way of the plaintiff's enforcing such a contract was our Act of Assembly of 26th April 1855, requiring an "agreement or memorandum in writing, or a note thereof" to bind Jack to pay Wray's debt. And it was an insuperable obstacle; for the statute is express, and must have effect. It was copied from the English Statute of Frauds and Perjuries, and has long since vindicated itself as a salutary rule of law. To take away this temptation to perjury, he who is sued for the debt of another has a right to demand written evidence of his promise. Nor was Jack's signature the requisite note in writing, for it imported only an endorsement of commercial paper, and made him liable as an endorser only to subsequent, and not to prior holders of the paper. True, in Paul *v.* Stackhouse, 2 Wright 302, we held the signature of the defendant sufficient to take the contract out of the statute, but there the signature, though a year after the date of the note was added on the face of it, making the defendant a drawer and an adopter of the language of the note. The note, and all its written words, became his, and the statute was complied with. But here there was no adoption of the language of the note as expressive of Jack's contract, and all that his signature implied was that he had assumed the liabilities of an endorser, which liabilities Morrison cannot enforce, because he is a prior endorser, and in that character liable to Jack. On the plaintiffs' *narr.*, therefore, as originally filed, he was not entitled to recover.

[Jack v. Morrison.]

But on the trial he added to his *narr.* the common money counts with the leave of the court, and he proved that Wray had placed in Jack's hands several promissory notes, to indemnify him against this very debt, and that three of the notes, amounting in the aggregate to $400, had been paid to Jack, or in the bank to his credit. Now, why should not Morrison recover that sum, on the money counts?

It is said that it was error to admit the counts, because they were introductive of a new cause of action. We think not. No new cause of action was introduced in the sense that forbids amendments of pleadings on the trial. Morrison had sued Jack for the money that Wray owed him, and the common counts were only another way of declaring that Jack was liable to pay that money.

It is next denied that an action will lie by Morrison for money so coming into Jack's hands, but all the authorities are against the plaintiff in error on this point. Nothing is better settled than that money paid to another for the use of a third party may be recovered by him for whose benefit it was paid. If there be no express promise to pay it over, the law will imply a promise, and it is of no consequence that the consideration moves between the original parties, and not from him who sues. The rule, indeed, is sometimes stated as broadly as that money may be recovered in *assumpsit* which the defendant *ex æquo et bono* ought to pay.

We think the court ought to have directed a verdict to be rendered for the plaintiff, upon the common money counts, for the $400, proved to have gone into Jack's hands, and there is no difficulty in our so modifying the judgment as to enter it upon those counts. But we cannot enter judgment on the money counts for the sum ($698.23) found by the verdict, for no such sum was proved to have been received by Jack. Nor can we enter judgment for the $400, because we may not have all the evidence; it is for the jury to fix the amount recoverable on the common counts from the whole evidence. The best we can do in such circumstances is to reverse the judgment, and let the record go back to have a judgment entered by the court below on the common counts for the sum in defendant's hands, which the jury may fix from all the evidence.

Judgment reversed, and a *venire facias de novo* awarded.