JANUARY TERM, 1883, No. 304.                    JANUARY 11, 1884.

## McDowell's Appeal.

1. Where a receiver at the solicitation of both partners, and acting in good faith and under the advice of counsel, continued a business at a loss, and being prevented by the active interference of the partners from effecting a sale of machinery and a patent, stored and insured the machinery at a considerable, though not unreasonable, expense, he ought not to be surcharged with the expense of continuing the business or the amount expended for storage and insurance.

2. Where a receiver collected all of the accounts of the firm that he could, took the accounts to a reliable collection agency, and instructed them to collect all that were available, and they, refusing some of them as uncollectible, reported to him, from time to time, as to the remainder, and he charged himself with the proceeds reported, he ought not to be charged with the alleged value of the accounts.

3. He ought not to be surcharged with such accounts where there is nothing to determine their value.

4. Such a receiver is entitled to a reasonable compensation.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Appeal of George McDowell from the decree of the Court of Common Pleas, No. 2, of *Philadelphia County*, dismissing his exceptions to the report of an auditor.

May 16, 1871, George McDowell was appointed receiver of the firm of P. Hevner & Co., consisting of Peter Hevner and Thomas A. McClelland.    He filed his account as such receiver January 10, 1881, and it was referred to William Drayton as auditor.

The auditor reported, *inter alia*, as follows:

During the six months after his appointment, the receiver, at the request of both parties, retained possession of the factory, stock, and fixtures of the firm, and carried on the business.    During this period, he collected some of the firm's accounts.

On the 11th day of November, 1871, the receiver presented a petition, praying for an order of sale; on reading which, the Court ordered:

That the prayer of said petition be granted, and that the said George McDowell be authorized and directed to make sale of the within-mentioned property at public sale.

The minute-book shows the following order was made November 21, 1871:

"On motion of B. L. Temple and H. S. Hagert, for the plaintiff and defendant, the Court order that the receiver put up for sale, on November 22, 1871, the patent right for the State of Pennsylvania, for rectifying and distilling whiskey under the Oliver Harris patent, and the machinery for refining whiskey under the said patent at the same time, and that he sell the same together for a price not less than $10,000."

The sale of the stock, etc., took place on November 22, 1871, but no bids were received for the machinery and patent right at all approaching the limit fixed by the court, and they were, therefore, withdrawn. As soon as the sale had taken place, the machinery was removed to the tobacco warehouse by the receiver, and stored at an expense of $120 per annum, and insured for $25 per annum. No application was made by him to the court at any time to sanction this expenditure, which was continued until —— 1881.

In —— 1881, the auditor, having filed an interlocutory report, the Court ordered that the machinery and patent right should be sold without conditions or limitations.

Acting under this order, the machinery and patent right were exposed to sale on May 26, 1881, and the terms of this sale not being complied with, were again exposed to sale on October 4, 1881. The amount realized from this sale, over expenses, was $260 69.

No inventory of the sale of November 22, 1871, was ever filed by the receiver, nor was any inventory filed by him of the assets which came into his hands as receiver.

The open accounts of the firm, when he took possession, amounted to a balance of $3,246 61.

The receiver claims that he sent these to a collection agency, and produced a paper stating that this was a list of the claims in the hands of Fairthorn & Rand, and, also, a letter from them stating that this was a final report of that firm on the claims sent to them.

The receiver also rented a box at the Fidelity Company

for the deposit of the receipts of P. Hevner & Co., and for his own private papers, half of which he has charged against the estate.

The moneys of the estate the receiver deposited with the Fidelity Company, but he drew on this fund as though it was his private account, and loaned the counsel for the defendant various sums of money from this fund.

In May, 1873, he purchased with $947 50 a bond of the Lehigh Valley railroad, which, in September, he sold at $110. He has nowhere charged himself with this profit, nor has he accounted for the two years and a half interest thereon.

Counsel for plaintiff asks that the receiver be surcharged, and accuses him of negligence and mismanagement of the estate :

*First.* In continuing to carry on the business for six months after his appointment, viz : From May 6, 1871, until November 22, 1871, and in postponing the sale of whiskey until the latter date, at an extra expense of $1,536 91, the total of sales being only $168 73.

*Second.* In failing to make sale of the machinery, or to offer it for sale, between November 22, 1871, and May 26, 1881, and in not applying to the court for leave to sell until March 24, 1881, but keeping the same on storage at an expense of $10 per month, and paying insurance thereon for ten years at $25 per annum, making storage $1,200, insurance $250, total $1,450, while the machinery only netted, at the sale, $260 69.

*Third.* In his dealing with the money of the estate, loaning them to others, and using them for his own purposes, and so mixed with his private funds as to make it impossible to distinguish whether they are his private moneys or those of the firm. This applies particularly to the deposits in his bank-book of

| | |
|---|---|
| January 10, 1872, . . . . . . . . . . . | $1,200 |
| January 20, 1872, . . . . . . . . . . . | 500 |
| March 19, 1873, , . . . . . . . . . . . | 500 |
| October 6, 1874, . . . . . . . . . . . | 250 |

*Fourth.* In omitting these items from his account filed, and also the item of deposit,

| | |
|---|---|
| May 8, 1875, . . . . . . . . . . . . | $31 81 |

which was money collected by him. (Testimony, page 17.)

*Fifth.* In not accounting satisfactorily for the uncollected assets of the firm, amounting to $3,246 61.

*Sixth.* In not charging himself with the patent, machinery, book accounts, stock of whiskey, etc., on hand at

the date of his appointment, and in filing no inventory of the assets which went into his hands.

*Seventh.* In investing $947 50, on May 7, 1873, in the purchase of $1,000 Lehigh Valley railroad six per cent. bond, in not accounting for the interest received and profit realized by him, the bond selling, in the fall of 1875, at $110, making a profit of $152 50.

*Eighth.* In paying $30 per annum for a safe to keep the few loose receipts belonging to the estate, making a total charge of $140.

*Ninth.* In not filing an account within a reasonable period, and delaying for ten years, when the balance on hand was nearly consumed in the expense of the receivership, viz : $1,892 12.

*Tenth.* In not investing this balance in his hands December 31, 1871.

In view of these conflicting opinions, it is necessary to decide :

*First.* What were the duties of the receiver, and how he fulfilled them in this case.

*Second.* How far he is protected by the advice of his counsel.

The reasons assigned by the plaintiff for surcharging the receiver afford a simple method of considering these questions in order, which the auditor has adhered to as closely as possible.

With regard to the first allegation, viz : That the receiver had no authority to carry on the business of the firm for six months after his appointment.

The general rule with regard to a receiver continuing the business of a partnership undoubtedly is, that the receiver, as an officer of the court, will not be appointed to continue the management of a business, which, from its nature, cannot be conducted under the direction of the court, as in the case of a theater, newspaper, hotel, &c., yet it is sometimes necessary for the court, by its receiver, to continue in the management of the business, over which the receiver is appointed for the purpose of effecting a more satisfactory adjustment, for better protecting the interest of all parties. The courts are generally adverse to assuming the management of a business, except as incidental to the object of the suit, and for the purpose of closing it up and dividing the proceeds, yet they will not surcharge a receiver for keeping up a business for a time, so as to wind it up for the benefit of all interested : High on Receivers, § 36 ; Hooper *v.* Winston, 24 Ill.; 353 Booth *v.* Clark, 17 How., 331.

[McDowell's Appeal.]

In this case, the business was undoubtedly carried on at a considerable loss, as appears both from the calculation submitted by plaintiff's counsel, and from the testimony of the receiver. He urges in justification that he carried this on at the request of both parties.

"I did not sell at the request of Messrs. Hevner and Mc-Clelland. They desired a private sale until it was found impossible to do so. Then I urged my attorney, Mr. Ruddiman, to obtain the order of court for me to sell, which was done. It was my desire, as soon as I was ap-pointed receiver, to effect a public sale, and I would have done so, but for this arrangement."

In view of this testimony, it became the duty of the plaintiff to contradict the allegations of the receiver, if possible.

Had a complaint been made, at the time of the continuance by the receiver of the business, to this court, it would have put an end to such extravagance on the part of its officer, or had it been shown that the plaintiff had remonstrated with the receiver for his conduct, the latter would undoubtedly have been surcharged under the above authorities; but, as no evidence was offered to contradict the testimony of the receiver, it must be accepted as true, and a great neglect of duty is attributable to the plaintiff, for it has always been held that it is the duty of plaintiff's solicitor to watch the actions of the receiver: Miller *v.* Elkins, 3 L. J. Ch., 128, and in High's work on Receivers, 181.

It is said that while formerly courts held a receiver could not make application to the court in the first instance, but should apply to counsel of plaintiff, and only on his refusal to act, apply, yet now a more liberal rule prevails; it does not seem proper, as no active steps were taken by the parties interested at the time, that at this late day one of them should be allowed to come in and ask that the receiver be surcharged for what was a mistake in his authority, that mistake having been encouraged by the very party who now seeks to take advantage of it.

The action of the receiver having been, although not in the line of his duty, yet not in direct violation thereof, this surcharge is therefore refused.

In answer to the second charge:

There is no doubt that the receiver's conduct in paying such large bills for storage, rent, and insurance on his own authority, and continuing so to do without ever ap-

plying to the court for sanction, is not justified by any reported case.

The receiver is an officer of the court, and is bound to apply to the court before making any outlay, except such as is imperative and urgent, and in the latter case should obtain the sanction of the court at the earliest opportunity: Edwards on Receivers, § 104; Adams\ *v.* Woods, 15 Cal., 206; Tempest *v.* Ord, 2 Meriv., 55.

But the receiver justifies his conduct in this particular by alleging the advice of counsel as to the effect of the order of court made November 21, 1871

Mr. McDowell testifies:

"On asking the advice of my counsel, I understood him to say that Mr. Hagert had enjoined me from selling the machinery and patent, which formed part of the assets of the estate, for a less sum than $10,000, through the court. I could not file any report until Mr. Hagert joined him before the court to have that order rescinded."

With regard to the request relative to the sale of the machinery, Mr. Ruddiman corroborates Mr. McDowell's statement, and says:

"I advised him that until there should be some modification of the order, either by the court itself or by the parties allowing him to make sale of the property at a less figure than that to which he had been restricted, it was his business to hold the property the best way he could without allowing it, as far as he was able, to suffer either diminution or depreciation."

How far will the advice of a counsel protect a receiver who has so managed the estate that the whole balance in his hands is consumed by the expenses of ten years, during which he has never filed an inventory or account, or applied to the court, whose officer he is, to sanction a single item of expenditure from November 11, 1871, until January, 1881?

The English rule, as laid down in Vez *v.* Emery, 5 Ves., 141, is that if an executor, in a doubtful matter, had taken the advice of counsel, and been advised by any gentleman of the law in this country that he was bound to make a certain payment, the chancellor would not have held him liable. * * *

The general rule, as to persons in a fiduciary capacity, is followed in several Pennsylvania cases: During's Appeal, 1 Har., 234; Neff's Appeal, 7 P. F. S., 91; Calhoun's Estate, 6 Watts, 186; Frankenfield's Appeal, 11 W. N. C., 373.

As in this case, there does seem to be a wide difference

of opinion as to the effect of the order of November 21, 1871, the receiver, as he employed counsel and followed his advice, should be protected. It is, therefore, with some hesitation that the auditor finds that the receiver, although guilty of neglect and outstepping the bounds of his duty and authority, is protected from responsibility by his action in taking and following the advice of counsel, and by the neglect on the part of plaintiff for so long a time to object to his course.

The third, fourth, and fifth charges the auditor reserves for further consideration, and in answer to the sixth and ninth points finds, that as to the neglect of the receiver to file an inventory of the assets in his hands, and his neglect to file an account until January, 1881, the testimony is conflicting.

In view of this conflict of testimony, and the advice above acknowledged on the part of Mr. Ruddiman, it seems improper to inflict a penalty on this account on the receiver.

This surcharge is therefore refused.

In answer to the fifth charge, the failure of the receiver to account for the uncollected accounts of P. Hevner & Co., the auditor finds:

"The accountant testified that a statement, which he identified, and which is appended, marked Exhibit D, was handed him by the book-keeper of the firm at the time he took possession.

"This statement shows the amount of open accounts to be $3,929 61, less payments of $683, leaving a balance due of $3,246 61. Testimony, page 8: 'None of the claims in Exhibit D have been paid to P. Hevner to my knowledge.''

"A list of claims was offered in evidence by the receiver, and marked Exhibit C. He testified, on page 1: 'These are the claims in the hands of Fairthorn & Rand,' but on page 20, Exhibit C shown witness, (Mr. McDowell:) 'That represents the list of claims in the hands of Fairthorn & Rand and Tener & Co.'

"On page 1: 'I collected all I could; I put them in the hands of Fairthorn & Rand; page –: I collected $595 81, as shown by my account; page 21: All the accounts were taken to Fairthorn & Rand, and they retained only those which they considered of value; I took all the accounts to them, and my instruction to them was to collect all that they could; page 2: Some of these accounts had been placed by P. Hevner & Co. in the hands of Tener & Co. for collection, the balance I put in the hands of Fair-

thorn & Rand; page –: Some of these claims were re-
fused by Fairthorn & Rand as not collectible; page 21:
The amounts so collected are filed in my account; Fair-
thorn & Rand repeatedly made reports to me, which were
finally written out by them, as shown by Exhibit E.

"From this testimony, the auditor finds the balance of
unpaid claims in Exhibit D amounts to $3,246 61; of
these $58 are marked bad (debts) on that list.

"Exhibit C shows that of the balance, $1,222 45 were
put in the hands either of Tener and Fairthorn & Rand,
or of the latter only.

"Exhibit E accounts for $893 73 of the claims mentioned
in Exhibit D as worthless. Of these, $440 25 are noted
in Exhibit C, and $453 48 are not.

"The receiver, in his account, has charged himself with
$595 86, as collected by him. Of these claims, $84 41 are
noted in Exhibit E.

"The balance of the claims mentioned in Exhibit D are
not accounted for in any way by the receiver, except in
so far as his statement goes, that he took them all to
Fairthorn & Rand. But this statement he does not ad-
here to, as shown by the testimony in one place, saying
that part were in the hands of Fairthorn & Rand, and
part were in those of Tener & Co. It appears, from his
accounts, he had dealings with the latter firm. But he
gives no account of which claims were placed in their
hands, nor what was done with them, nor does he give
any corroborating testimony to show what was the status
of these debtors. The auditor has prepared a table show-
ing what disposition was made of each claim in Exhibit E.

"The duty of a receiver to obtain payments and to
keep strict and exact accounts of all his proceedings is a
fundamental principle, and a failure so to do will subject
him to punishment: See High, § 38. He is held to a
strict accountability for the faithful performance of the
trust reposed in him: Jackson v. DeForrest, 14 How., P.
R., 82.

"If a receiver is appointed, he must proceed to sell the
partnership property, and collect the outstanding debts
without delay, and in this case the order of May 16, 1871,
under which he was appointed, imposes the latter duty
on him specifically.

"Although, as is said in Witmer's Appeal, 6 Norris,
120, it is the harshest demand that can be made upon a
trustee, to compel him to make up a deficiency not owing
to his willful default, and that trustees are not liable be-

yond what they actually receive, except in cases of gross negligence.

" Yet, ' in considering whether a trustee has made himself liable for a failure to collect and convert the assets in his hands, regard must be had to the character of the trust ; thus a guardian would not be held to such prompt action in enforcing collection of securities, as an executor, administrator, or assignee for the benefit of creditors.

" ' It was the duty of the appellee within a reasonable time to make proper efforts to convert all the assets into money, and his failure so to do is gross negligence : ' Chambersburg Bank App., 26 P. F. S., 203.

" So in Johnston's Est., 9 W. & S., 107, a failure of an executor to collect or even demand payment for six months after the note arrived at maturity was held negligence. ' To entitle him to a credit he must    *    *    *    prove that he took legal steps to recover the sum due. or that from the notorious insolvency of the debtors, a suit would have been useless.'

" Skerrett's minors, 2 Hog, 192, where rents were lost by neglect of the receiver held, he must make them good.

" To the extent of this balance of $894 95, the fifth charge is sustained.

" The third charge is one that must be disentangled from the confusion which the receiver's remarkable system of book-keeping has thrown around it.

" He undoubtedly, by his own admission, shows that he used the moneys of the estate as his own.   He admits borrowing money from the receiver's balance, and says his check-book will show the state of the case.   He also loaned from time to time sums of money to B. L. Temple, Esq., as he testified, on collateral security, but without interest.   He claims to have advanced money to the estate, and that several of the checks were drawn to repay himself for these advances.   The auditor has endeavored to show how this exchange of checks stands.

" In May, 1873, he invested $947 50 in the purchase of a Lehigh six per cent. bond, on which he did receive interest for about two years and six months, when he sold it for $1,100.   He has not accounted for the interest or profit.   He claims to have sold it to re-imburse himself for storage, which he had paid, amounting to $386, and to have used the balance for the same purpose.

"According to the receiver's account as filed, the state of the balance was :

" He had received up to June 15, 1871, $203 09, expended $678, leaving a balance of $475 09 due to him ; up to Au-

[McDowell's Appeal.]

gust 15, received $769, expended $938, leaving a balance of $169 due him, and by December 31 he had received $4,489 34, and expended only $2,841 36, leaving a balance in his hands of $1,647 98. The receiver had never, therefore, occasion to be out of pocket over $500 at any time, and allowing this as a large balance, the interest on that sum for six months would be $15.

"As the receiver has derived the benefit of interest on the money in his hands, and has loaned it out and taken no interest, he should be charged with interest on this balance of $1,647 98 from January 1, 1871, to the present day. This course is approved in the following cases: Utica Insurance Co. *v.* Lynch, 11 Paige, 520 ; Cowdry *v.* R. R.. 1 Wood, 337 ; Drever *v.* Maudesley, 13 L. J. Ch., 433.

" He should also be surcharged with the profit made on the sale of the bond, as asked for in the seventh charge, and the item of deposit in his bank-book of May 8, 1875, $31 81, which he failed to explain.

"The receiver does not show any good ground for so great an expenditure as $140 for a safe to keep the few papers shown to the auditor. As the receiver incurred this expense without an order of court, and without the advice of counsel, he must depend on the propriety of his conduct for the approval of the expenditure. The auditor finds that a charge of $5 per annum would have been a proper allowance for safe rent.

"The allowance for counsel fee is rejected on the ground that he never asked for such an allowance from the court, but a fee of $100 is allowed him for stating this account.

"The extra costs of this audit are also imposed on the receiver. The auditor has fixed his fee at the request of counsel at $200 ; of this amount $50 should be imposed on the estate, and the balance on the receiver. The auctioneer's commission of $197 is also allowed.

"The commissions of $1,000, asked for by the receiver, are refused."

McDowell filed exceptions to the report of the auditor, which were all dismissed by the Court and the report confirmed. He thereupon took this appeal, assigning, *inter alia*, the following specifications of error:

*First.* The court below erred in refusing to allow the receiver counsel fees, and in surcharging him with $100 paid by him on account of counsel fees.

*Second.* The court below erred in not allowing the receiver commissions for his services in the management of the receivership.

[McDowell's Appeal.]

*Third.* The court below erred in surcharging the receiver with $42 45, being the amount of five items for which credit was asked, because no vouchers were produced for said items by the receiver; the payment thereof being duly proved by the receiver.

*Fourth.* The court below erred in surcharging the receiver with interest on the sum of $1,647 98, from January 1, 1871, to January 1, 1881, amounting to $988 78.

*Fifth.* The court below erred in surcharging the receiver with the profit realized on the sale of the $1,000 bond of the Lehigh Valley Railroad Company, and interest on the same, amounting to $216 55.

*Sixth.* The court below erred in surcharging the receiver with the sum of $894 95 of uncollected assets; the evidence showing that the assets of the firm were collected by the receiver with due diligence, and that the claims, amounting to said sum of $894 95, were uncollectible.

*Seventh.* The court below erred in surcharging the receiver with the sum of $31 81, being the amount of a deposit not included in the account.

*Eighth.* The court below erred in imposing upon the receiver a proportion of the expenses of the audit and settlement of his account, amounting to the sum of $150, as the whole of said expenses should have been imposed upon the fund for distribution.

*John J. Clark* and *Francis E. Brewster* for appellant.
There is no fact in the case which justifies the harsh course pursued by the learned auditor in disallowing the receiver's commissions and the counsel fee of $100, or in imposing three fourths of the expenses of the audit on him, unless it be the failure of the receiver to collect claims amounting to nearly $900, which he endeavored to collect, but found uncollectible. As the auditor has surcharged the appellant with the amount of these claims, it would seem that he was sufficiently punished for his management of the estate without taking away his entire compensation, and, in addition, imposing heavy costs upon him. The evidence fails to show that the receiver was guilty of any negligence or want of diligence in collecting the claims which came into his hands.

It has been repeatedly held that it is the harshest demand that can be made in equity to compel trustees to make up a deficiency not owing to their willful neglect: Jackson *v.* Jackson, 1 Atk., 513; Johnson's Appeal, 12

S. & R., 317; Neff's Appeal, 7 P. F. Smith, 91; Witmer's Appeal, 6 Norris, 120.

*Henry S. Hagert* for appellee.

Where an officer like a receiver grossly neglects to file his inventory and pass his accounts, every presumption in reference to their fairness and justice will be construed strongly against him: *In re* Carter, 3 Paige's Ch. Rep., 148; Edwards on Receivers, § 1021.

The auditor surcharged the accountant with interest on the balance in his hands on the ground that he mixed the trust funds with his own, and used and misappropriated them, and in so doing the auditor was clearly within the line of the authorities: Gilbert's Appeal, 28 Smith, 266; Reeves & Parvin's Appeal, 38 Leg. Intel., 441; Stehman's Appeal, 5 Barr, 413.

February 4, 1884, the opinion of the Court was delivered by STERRETT, J.:

There was undoubtedly great delay in disposing of the property, settling the business of the copartnership, and filing a final account, but the receiver was not wholly to blame for that. At the solicitation of both partners, and with the view of better disposing of the stock on hand, he continued the business for about six months after the dissolution of the firm; and, when he obtained an order of court for the sale of all the property, including the patent and machinery, they interposed and had the order so modified as to require the patent and machinery to be sold together for not less than $10,000. Pursuant to the order of sale, all the property was promptly sold, except the patent and machinery. For those articles only a small percentage of the sum fixed by the Court was offered and they were accordingly withdrawn. It is not even alleged that they could have been sold then or since for anything near the amount named, and the partners made no effort to have the order so modified that a sale could be effected. It is true, the receiver himself might have applied to the court for a rescission or further modification of the order; but, under the circumstances, it was quite as much their duty as his to make the application. Being thus prevented, by the active interference of the partners, from effecting a sale of the patent and machinery, the receiver was obliged to provide for the safe-keeping of the latter at considerable expense. It is not alleged that the amount paid for storage and insurance was unreasonable. The learned auditor substan-

tially found that in disposing of the property and stock on hand, the receiver acted in good faith, under the advice of counsel, and that the parties now complaining either urged him to do what he did or acquiesced; and hence, he very properly refused to surcharge him either with the expenses of continuing the business, the amount expended for storage and insurance, or the alleged value of the machinery.

In view of the fact found by the auditor, we think there was error in refusing to allow appellant any compensation for his services as receiver. While he was clearly not entitled to the full amount claimed, it does not appear that anything was done or omitted to be done by him that should work a forfeiture of his entire claim. By far the greater part of the services for which compensation is claimed were either rendered at the instance of the partners or made necessary by their active interference. Objection to the allowance of compensation, therefore, comes with bad grace from them. Taking into consideration all the facts and circumstances, as shown by the auditor's report, we think appellant is entitled to at least $300 for his services, and that sum is accordingly allowed.

The subject of complaint in the sixth specification of error is the surcharge of thirteen uncollected accounts amounting to $894 95, a schedule of which is appended to the auditor's report. It was the duty of appellant to account for the property and assets that came into his hands as receiver, and if he failed to show that the accounts referred to were uncollectible or worthless, he was properly chargeable with whatever, in the exercise of reasonable diligence, he might have realized therefrom. He therefore undertook to prove that such of the accounts as were available had been collected, and on that subject he was examined by the auditor. Speaking of the accounts, a schedule of which had been furnished by the book-keeper of the firm, he testified in substance that he collected all he could; that he took the accounts to Fairthorn & Rand, a reliable collecting agency, and instructed them to collect all that were available; that some of the accounts were refused by them as uncollectible; and, as to those retained by them, they reported to him from time to time, collected all they could, paid over the proceeds, and he charged himself therewith in his account. There appears to have been no conflict of testimony as to these facts, and the only inference that can be fairly drawn from them is that appellant was reasonably diligent in endeavoring to collect the accounts that

[McDowell's Appeal.]

came into his hands. But, even if this were not so, there is nothing by which to determine the value of the accounts with which he was surcharged. They were old accounts, some of them long past due, and for aught that appears, they were entirely worthless; and, from the facts reported by the auditor, it may be fairly inferred that such was the fact. The evidence was insufficient to justify the surcharge complained of, and it should therefore be stricken out. The surcharge of interest complained of in the fourth specification is erroneous as to the amount thereof. The account of the receiver shows that the average annual disbursements made by him from 1872 to 1880, exceeded the interest on the fund assumed to be in his hands during that time. In computing the interest with which he should be charged, these disbursements should be taken into account. The fund on which interest is properly chargeable is still further reduced by the allowance of compensation to which he was entitled when it was earned, and that also lessens the item of interest making up the surcharge; but it is unaffected by striking out the surcharge for uncollected accounts, for the reason that no interest appears to have been charged thereon. The result of these corrections in the computation of interest is a reduction of $401 68 in the amount surcharged; and, to that extent, the fourth specification of error is sustained.

There is nothing in the remaining assignments of error that requires special notice. They are not sustained.

After deducting expenses of audit, $230 75, and the sums awarded to creditors, viz: $138 88 and $341 61, the balance found by the Court to be in the hands of appellant, and which was awarded to H. S. Hagert, Esq., attorney for Thomas A. McClelland, appellee, is $2,317 43, from which should be deducted as follows:

Allowance for compensation, . . . . $300 00
Surcharge for uncollected accounts, .    894 95
Reduction in surcharge of interest, .    401 68
                                      ——————— $1,596 63

Leaving the correct balance, . . . . . . . .    $720 80
Payable to H. S. Hagert, Esq., attorney for appellee, with interest from December 15, 1872, the date of the decree in the court below. Under the circumstances, the costs of appeal should be paid by appellant.

As above modified, the decree of the court of common pleas is affirmed and appeal dismissed at costs of appellant.