## T. A. Gillespie, W. H. Warwick and J. B. R. Streator, Appellants, *v.* The Blair Glass Company.

*Receivers—Corporations—Equity.*

Where receivers are authorized to operate the works of a corporation "with materials now on hand," and such other materials as the court might authorize them to buy, sell manufactured product and pay into court for distribution the proceeds of such sales over and above the cost of production, they have no authority to involve the plant of the company itself in debt, and to sweep away its entire value to the detriment of labor claimants whose liens had become fixed upon the plant.

A chancellor will seek to protect one acting in strict compliance with his orders from loss, but one who has acted upon his own judgment has no right to expect the court to divest a clear legal right existing in others to save him from the consequences of his own unauthorized acts. Per WILLIAMS, J.

Argued Oct. 18, 1898. Appeal, No. 82, Oct. T., 1898, by plaintiffs, from decree of C. P. Washington Co., No. 844, in equity. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for a receiver.   Before McIlvaine, P. J.

From the record it appeared that in 1894, T. A. Gillespie, W. H. Warwick, and J. B. R. Streator were appointed receivers of the Blair Glass Company, with authority to operate the works of the corporation, " with materials now on hand," and such other materials as the court might authorize them to purchase. The receivers operated the works for a time, but subsequently obtained an order of court, and sold the property to T. A. Gillespie for $1,500.   The receivers then filed the following account :

### Dr.

| | |
|---|---:|
| To collection of outstanding accounts and sale of manufactured ware   .   .   . | $12,469.74 |
| Sale of company's plant .   .   .   . | 1,500.00 |
| Uncollected accounts, including $5,475.38 due from J. H. Blair   .   .   .   . | 7,341.03 |
| | $21,310.77 |

### Cr.

| | |
|---|---:|
| By amounts disbursed in operation of plant and collection of assets  .   .   .   . | 14,215.16 |
| Improvement of plant   .   .   .   . | 278.20 |
| Uncollected accounts   .   .   .   . | 7,341.03 |
| Receivers' commissions, counsel fees and court costs .   .   .   .   .   . | 1,320.00 |
| | $23,154.39 |
| Balance due receivers   .   .   .   . | $1,843.62 |

The auditor, James I. Brownson, Jr., Esq., appointed to pass on exceptions to the account and make distribution found that there were two separate funds that came into the hands of the receivers—one derived from the collection of the outstanding accounts of the Blair Glass Company and the receipts from wares manufactured and sold by the receivers, the other derived from the sale of the plant—and that these funds should have been separated in the statement of account so as to show the receipts and disbursements under each.   He accordingly restated the account as follows :

OPERATING ACCOUNT.

Dr.

| | |
|---|---:|
| Moneys received from sources other than sale of plant . . . . . . . | 12,469.74 |
| Uncollected accounts . . . . . | 7,341.03 |
| | $19,810.77 |

Cr.

| | |
|---|---:|
| Disbursements in carrying on the business . | 14,493.36 |
| Uncollected accounts . . . . | 7,341.03 |
| Commissions of Receivers . . . . | 750.00 |
| Counsel fees . . . . . . | 250.00 |
| Prothonotary's costs . . . . . | 15.24 |
| | $22,849.63 |

SALE OF PLANT.

Dr.

| | |
|---|---:|
| Purchase money from T. A. Gillespie . | $ 1,500.00 |

Cr.

| | |
|---|---:|
| Commissions of Receivers . . . . | 75.00 |
| Counsel fees . . . . . . | 50.00 |
| Prothonotary's costs . . . . . | 4.76 |
| | 129.76 |
| Balance for distribution . . . . | 1,370.24 |
| | $ 1,500.00 |

The auditor distributed the balance to labor claimants.

Exceptions to the auditor's report were overruled by the court. The receivers appealed.

*Errors assigned* were in overruling exceptions to auditor's report.

*A. G. Braden*, with him *C. W. Campbell*, for appellants.— The established rule is that the allowance to receivers and other trustees is to be paid out of the funds in their hands: Gluck & Becker on Receivers of Corporations, p. 461, sec. 105; Kneeland v. American Loan & Trust Co., 136 U. S. 89; Burnham v. Bowen, 111 U. S. 776; Union Trust Co. v. Illinois Midland Co., 117 U. S. 444; Myer v. Car Co., 102 U. S. 1; Meyer v. Johnston, 53 Ala. 237.

*John C. Bane,* with him *A. M. Linn,* for appellee.—A receiver may, undoubtedly, appropriate moneys in his hands belonging to the trust as he may think proper, always taking the risk that the court will finally approve his action, but he has no authority to bind the trust by contract without the authority of the court: Lehigh Coal, etc., Co. v. Central R. R. Co. of N. J., 35 N. J. Eq. 429.

OPINION BY MR. JUSTICE WILLIAMS, January 2, 1899:

This was a proceeding for the settlement of the accounts of the receivers of the Blair Glass Co. At the time of their appointment as receivers they were given authority to operate the works of the company " with materials now on hand," and such other materials as the court might authorize them to buy, sell the manufactured product, and pay into court for distribution the proceeds of such sales, over and above the cost of production. Under this order they began operations, and continued them for six or seven months, when they secured an order directing the sale of the entire plant at public sale. After executing the order of sale they filed one account covering all their receipts and expenses which practically absorbed the proceeds of the sale by the expenses of the previous operations. The wage claimants excepted to this account, raising two principal questions: first, should a separate account have been filed of the proceeds of the sale of the glass company's plant, and the appropriation of the fund? and next, can the receivers under the circumstances of this case pay their operating expenses out of the price received by them for the real estate, and so take it away from the wage claimants who have a lien upon it for the sums due them? Both the auditor and the learned judge of the court below considered these questions and held with the exceptants. But they further found the fact to be that the receivers were not in a position to raise any questions about the effect of the order authorizing them to operate the work, since they had continued their manufacturing operations beyond the meaning and purpose of that order, and upon their own judgment as to its desirability and profit. This was not a subjection of themselves to the direction of the court, but an assumption of authority over the business and the assets in their hands which carried with it the risk of loss in the operations so con-

ducted. It is not necessary to inquire under what circumstances these receivers would be protected from loss by the court, since the question is not raised by the facts. The receivers might look to the fund designated by the court, including the proceeds of the goods manufactured by them for the means with which to pay their operating expenses, but they could not make use of the original order authorizing them to work up the materials on hand and such as the court should authorize them to purchase to involve the plant itself in debt and to sweep away its entire value. A chancellor will seek to protect one acting in strict compliance with his orders from loss, but one who has acted upon his own judgment has no right to expect the court to divest a clear legal right existing in others to save him from the consequences of his own unauthorized acts.

The receivers had a designated fund in this case to which to look. When that fund was exhausted they knew it. If, instead of suspending the unprofitable operations, they chose to continue them and incur a considerable indebtedness which they knew they could not pay, their improper conduct gives them no claim upon the chancellor or the creditors for reimbursement. They are in the same position as other improvident debtors. The proceeds of the realty were already appropriated by the law to the laborers, and were beyond the reach of the receivers. The court below rightly held that the account must be separately filed, and the fund raised from the order of sale of the glass works must go in payment of the labor claims. This was clearly right and the decree must be affirmed.