## Pennsylvania Engineering Works et al. *v.* New Castle Stamping Company.

*Corporations—Receivers—Payments — Losses — Issue of unauthorized certificates—Surcharge—Payments directed by order of court—Subsequent order—Priority.*

1. Where a business is being conducted at a loss a receiver cannot take advantage of his position and pay himself in full at the expense of other creditors, as his equity is not superior to theirs.

2. A receiver may properly be surcharged for the amount paid by him on unauthorized certificates and for the amount expended by him in repayment of money borrowed without authority.

3. Where the proceeds of unauthorized certificates and notes went into the business, a receiver surcharged therefor has an equitable claim equal to that of other creditors, but is not entitled to priority.

4. An order of court directing a receiver to continue the business, implies the authority to purchase supplies necessary for that purpose.

5. A receiver is not personally liable merely because the business may have been conducted temporarily at a loss, especially where he acted in good faith and the loss did not result from his misconduct or negligence.

6. While a receiver will be held to a rigid accountability, nothing more is required of him than that he act in good faith and exercise the discretion and prudence of ordinarily careful men in pursuits of similar character.

7. Where an order of court expressly charges the funds in the receiver's hands with the payment of authorized certificates, the payment thereof should be made to the holders prior to the receiver's commission fixed by a subsequent order of court.

8. Upon exceptions to the report of an auditor to pass upon the account of a receiver, it appeared that the receiver had continued the business under an order of court, that in some months there were losses and in others profits, but that there was a total loss in the conduct of the business during the receivership, the auditor found that some of the expense incurred in closing out the business might have been eliminated by winding up the business at an earlier date, but there was no finding as to the amount of loss thereby sustained, and no sufficient evidence upon which such a finding could have been based. There was no sufficient evidence to indicate want of proper care and attention to the business on the part of the receiver. *Held,* the receiver was improperly surcharged for the amount of the loss under the receivership.

9. In such case where the fund for distribution was not sufficient to pay in full all the preferred claims, an order was made directing payment in full of local taxes, expenses of the audit, costs of appeal, counsel fees, payment of certificates authorized by the court, and after the payment of such special claims directing the balance to be distributed to the receiver to apply upon his claim for compensation and for the amount paid a watchman whose appointment had been authorized by the court.

Argued Oct. 2, 1917. Appeal, No. 7, Oct. T., 1917, by George W. Johnson, Receiver, from decree of C. P. Lawrence Co., March T., 1908, No. 1, in equity, dismissing exceptions to auditor's report, in case of Pennsylvania Engineering Works and R. C. Patterson v. New Castle Stamping Company. Before Brown, C. J., Mestrezat, Stewart, Frazer and Walling, JJ. Reversed.

Bill in equity for the appointment of a receiver.

Exceptions to report of Charles R. Davis, Esq., Auditor. Before EMERY, P. J.

From the record it appeared that the New Castle Stamping Company was a Pennsylvania corporation chartered in 1901, and engaged in the manufacture of enamel ware in New Castle, Pennsylvania. It became so financially embarrassed that on December 7, 1907, on the petition of certain stockholders and creditors, George W. Johnson was appointed receiver. Its indebtedness was about four hundred thousand dollars, which included one hundred and fifty thousand dollars of first mortgage bonds issued in 1905.. During the six years of its operation, prior to the appointment of the receiver, the corporation had lost on an average about sixty thousand dollars a year. The order appointing the receiver directed the completion of unfinished work. At that time the assets, aside from the real estate, were inventoried at $42,531.02. The plant employed about two hundred men and it was desired by the parties in interest that it be kept a going concern. On December 20, 1907, on the receiver's petition, the court below entered a decree, "that it is for the best interest and advantage of the creditors and stockholders of the New Castle Stamping Company that the said company's plant be operated by George W. Johnson, Receiver, under the direction of the court and to enable him to operate the same that he purchase such supplies and materials as are necessary, and to that end the court do adjudge and decree that the said receiver be and he hereby is authorized, empowered and directed to issue receiver's certificates to an amount not exceeding thirty thousand dollars. . . . . . . Said certificates shall be a lien prior to all other liens, except to the lien of the first mortgage now upon the properties of said New Castle Stamping Company, which lien shall not be prejudiced hereby, upon all the goods, properties, assets, lands and tenements of New Castle Stamping Company and shall be paid first before any other claim against the New Castle Stamping Company,

out of the moneys realized from the sale of the goods, chattels, land and tenements of the said New Castle Stamping Company, which said goods and chattels, lands and tenements, subject to the lien of the said first mortgage, are hereby placed and directed to be held by the receiver as security for the payment of the certificates of indebtedness issued in pursuance of this decree.

"The court further adjudge and decree that it is for the best interest of the said company that the plant be continued as a going concern and to that end the receiver is authorized, empowered and directed to purchase, from time to time, such materials and supplies as are necessary for the operation of said plant and to complete the manufacture of the goods now on hand and to continue the operation of the plant until further order of the court, and to place the goods so manufactured on the market, keeping an account of all moneys by him received and keeping the same deposited to his account as receiver, using the same from time to time only under the authority of the court.

"It is further ordered that the said receiver on or before the second Monday of each month during the receivership, and until further order of the court, shall file in this case a written statement under oath showing the amount of purchases made by him, the amount of moneys expended by him, the amount of goods sold and the amount of moneys by him so received."

The receiver issued certificates for the thirty thousand dollars, and also issued additional certificates amounting to five thousand nine hundred dollars without authority; the proceeds of all of which were used in the business. He expended over nine thousand dollars in necessary repairs and improvements, paid bills, current when he took the plant, and continued its operation. The receiver kept full and accurate accounts but not so as to show at a glance the status of the business, there being no separate record of trial balances or of profit and loss. He failed to file the monthly statements as re-

quired by the order of court, being advised by his counsel that only an annual statement was necessary. In February, 1909, he filed a statement of the business up to December 31, 1908. For that period the books showed a gain of $8,496.18, and for the year 1909 a loss of $1,-012.65. The year 1910 proved disastrous to the enterprise. As early as February of that year the receipts of the plant were not sufficient to defray its expenses and the receiver began borrowing money on his own notes to enable him to keep the plant going. This he continued from month to month until he had so borrowed and expended $16,000.00; and the accounts of the receiver showed a loss for each month of that year, except February and March. The entire business of the receiver to May 31, 1910, showed a net gain of $1,588.27; but the succeeding months proved more unfavorable until the plant was practically closed on October 15, 1910. George L. Patterson of New Castle was a large stockholder of the corporation and president thereof during its entire existence and took a great interest in its affairs. It was at his instance that Johnson accepted the receivership; and thereafter they frequently conferred together with reference thereto. During the summer of 1910 the receiver was in ill health and sought to be relieved of the receivership; and on that subject had repeated interviews and some correspondence with Patterson, who tried to find some suitable person who would relieve Johnson; and gave the latter assurance that he would be relieved on the return of the judge, who was temporarily absent from the district. Patterson and other stockholders and creditors earnestly urged that in the meantime the receiver should keep the plant a going concern, which was done until October 15th, but no other receiver was appointed. Prior to closing the plant, and largely during the year 1910, the receiver became indebted to various parties for material and supplies furnished the plant amounting in all to $30,440.00, which indebtedness has never been paid.

During the receivership the plant did business with other concerns in which the receiver was more or less interested, but those transactions appear to have been fair and without prejudice to the New Castle Stamping Company. After the plant closed it did some work on brass shells for another company, but the receiver was paid therefor, and, as it was necessary to keep the plant open in winding up its other business, this does not seem to have been prejudicial to the receiver's trust. After the plant was closed, the receiver made disposition of the personal estate from time to time at private sale, and collected the accounts, and later by order of court made public sale of the plant for a nominal sum, subject to the mortgage. In winding up the business after the plant was closed, there was apparently a loss of $40,-041.18; some of which the auditor found might have been avoided had the receiver sought an order of court and made prompt sale of the remaining assets. The evidence indicated that a considerable loss would be the natural result of closing the plant and disposing of its property.

During the summer and fall of 1910, while the plant was losing money, and when it was doubtful whether the assets were sufficient to pay the expenses of the receivership and the debts incurred by the receiver, he used the receipts of the business to pay in full the certificates he had issued without authority and also to repay the amounts he had borrowed and put in the business earlier in the year, and left unpaid the claims of other creditors as above mentioned and also six thousand dollars due the National Bank of Lawrence County on certificates properly issued by him. The receiver testified that he did not know until January, 1911, that the assets were not sufficient to pay all of the debts and expenses of the receivership. In 1913, the court which appointed the receiver, after an exhaustive investigation, not only found that he acted in good faith but that he was diligent in the care and preservation of the property, and fixed his com-

pensation at fifteen thousand dollars, and decreed the same to be a first lien upon the plant. The receiver filed his final account in 1913 showing receipts and disbursements of approximately six hundred thousand dollars and a balance due him of $16,420.16. To this account numerous exceptions were filed by creditors and other interested parties. Charles R. Davis, Esq., was duly appointed auditor to pass on the exceptions, and, after taking testimony and full consideration, filed an elaborate report covering one hundred and seventy-seven pages. This appeal was taken by the receiver from the decree of the court dismissing exceptions filed to and confirming that report.

The opinion of the Supreme Court further states the facts.

The court dismissed the exceptions. George W. Johnson, Receiver, appealed.

*Errors assigned* were in dismissing the exceptions.

*Robert K. Aiken,* with him *James A. Gardner,* for appellant.—The receiver was wrongfully surcharged with the amount of the losses incurred by him in operating the plant, there being no evidence that the receiver acted in bad faith or that he failed to exercise the discretion or prudence of ordinarily careful men: McDowell's App., 4 Penny. 384; Chapman v. Atlantic Trust Co., 119 Fed. R. 257.

The receiver was entitled to be reimbursed for the money advanced by him in operating the business: Walter v. W. Branch Table & Furniture Co., 12 Dist. Rep. 529; Cake v. Mohun, 164 U. S. 311; Mustin's Est., 188 Pa. 544; Bentley's Est., 196 Pa. 497; Donnelly's Est., 246 Pa. 308; Re British Power, Traction & Light Co., 1 Chan. Div. Law. Rep. 497, 1906; Burt et al. v. Bull, 1 Q. B. 276, 1895; Strapp v. Bull et al., 2 Chan. Div. 1, 1895.

*Wylie McCaslin,* with him *Leonard M. Uber, James A. Chambers, W. D. Wallace, Homer C. Drake, Martin & Martin, E. M. Underwood* and *H. K. Gregory,* for appellees.—The receiver was careless in the management of his trust and was properly surcharged: Gutterson & Gould v. Lebanon Iron & Steel Co., 151 Fed. Rep. 72; Decker v. Berners Bay Mining Co., 2 Alaska 504; Fleming v. Hotel Co., 70 N. J. Eq. 509; Matter of Punnet Cycle Mfg. Co., 24 N. Y. Misc. 310; Gillespie et al. v. The Blair Glass Co., 189 Pa. 50; First Natl. Bank v. Barnum Wire & Iron Works, 27 N. W. 657; Continental Trust Co. of New York v. Toledo, Etc., R. R. Co., 59 Fed. Rep. 514.

The receiver had no right to prefer himself in the repayment of notes for money advanced by him: Johnson v. Gunter, 69 Ky. 534; Union Trust Co. v. Illinois, Midland Ry. Co. et al., 117 U. S. 434; Chicago Vault Co. v. McNulta, 153 U. S. 554; Peoria Steam Marble Works v. Hickey, 110 Ia. 276; Morgan & Co. v. Texas, Etc., Railway Co., 137 U. S. 171; Farmers L. & T. Co. v. B. & M. Tel. Co., 148 N. Y. 315; Lewis v. Linden Steel Co., 183 Pa. 248.

OPINION BY MR. JUSTICE WALLING, January 7, 1918:

The auditor surcharged the receiver, inter alia, with the amount paid by him on the unauthorized certificates and also with the amount expended by him in repayment of the money borrowed in 1910; those items making a surcharge of $22,287.16, including interest paid; and as to that amount allowed the receiver to pro rate with his general creditors. As to this we fully agree with the auditor, for where the business is being conducted at a loss a receiver cannot take advantage of his position and pay himself in full at the expense of other creditors, as his equity is not superior to theirs. In such case the debts can only be paid pro rata, and, if paid in full, the receiver will be personally liable: 4 Cook on Corporations, Sec. 878; Gutterson and Gould v. Lebanon Iron &

Steel Co., 151 Fed. Rep. 72; Alderson on Receivers, Sec. 239. The receiver was personally liable on the certificates and notes which he had given without authority; and, as the proceeds thereof went into the business, he had an equitable claim equal to that of other creditors, but is not entitled to priority: Union Trust Co. v. Illinois Midland Ry. Co., 117 U. S. 434; Nessler v. Industrial Land Development Co., 65 N. J. Eq. 491; Peoria Steam Marble Works v. Hickey, 110 Ia. 276. And see Gluck and Becker on Receivers, Sec. 96; also Pangburn v. American Vault, Safe & Lock Co. (No. 1), 205 Pa. 83.

The auditor also made the further surcharge: "To amount of loss in operating plant......$53,651.50."

This amount is less than the actual loss sustained after February 1, 1910, in the conduct of the business and the winding up thereof, and is fixed at that sum seemingly to create a fund sufficient to meet the deficiency and enable the receiver to pay all the outstanding debts and expenses of the receivership. In effect it makes him personally liable for such debts and expenses. In our opinion the facts found by the auditor do not justify such conclusion.

The order to continue the business implied the authority to purchase supplies necessary for that purpose: Alderson on Receivers, Sec. 245. As a general rule a receiver is not personally liable for debts contracted by him in the conduct of the business, except in case of personal misconduct or negligence: 3 Cook on Corporations, Sec. 878; High on Receivers, Sec. 272; 34 Cyc. 294; 23 Am. & Eng. Enc. of Law (2d Ed.) 1096.

True, he conducted the business several months at a loss, but he had had good months and bad months previously and it probably could not be determined at the end of one or two unfavorable months that the business would prove disastrous. The owners of the plant had operated it for six years at a loss and were not discouraged, and at this time were strenuously urging the receiver to keep it a going concern. He was then doing

an average amount of business, even in unfavorable times; and, while it may have been unwise to keep the plant going so long, yet under all the circumstances we cannot say that the receiver thereby made himself personally liable for all the unpaid debts of the receivership, most of which were contracted in the year 1910. There is no other ground on which to base such a liability.

A receiver is not personally liable merely because the business may have been conducted temporarily at a loss, especially where he acted in good faith, and the loss did not result from his misconduct or negligence: See Mc-Dowell's App., 4 Penny. 384. While the receiver will be held to a rigid accountability, nothing more is required of him than that he act in good faith, and exercise the discretion and prudence of ordinarily careful men in pursuits of similar character: 34 Cyc. 253. The auditor fails to find how much earlier, or when, the plant should have been closed, and we are unable to do so from the evidence. To say arbitrarily that the plant must close because its operation for one or two months indicates a loss, might stop the business before it got fairly started, or at any period of depression. We agree with the auditor that the receiver was chargeable with knowledge of the actual condition of the business as shown by the books, and also that he should be surcharged with so much of the loss as might have been prevented by proper care and attention to the business, but there is no finding as to how much of the loss if any could have been so prevented, and nothing to indicate want of proper care and attention, except that the business was for a time conducted at a loss.

On the question of closing out the business, the auditor finds that "some of the expense thus incurred might have been eliminated by winding up the business at once instead of continuing for so long a period," but makes no finding as to the amount of loss thereby sustained, and there is no sufficient evidence upon which such finding

can be made; and hence no basis for a surcharge. Neither is there proof or finding that any loss resulted from the receiver's failure to file the monthly statements as required by the order of December 20, 1907. To warrant a surcharge there must be loss resulting from misconduct. He is relieved of any charge of bad faith in that matter by the advice of his counsel. Taking as a whole the order of the court made December 20, 1907, we believe it authorized the receiver to pay current expenses, such as pay rolls, etc., without requiring in each instance a special order of court. It is of course a hardship for those who furnished supplies to the receiver in good faith to lose their claims; but it is also a hardship for the receiver, who in any event will sustain a considerable financial loss in addition to his time and effort, to pay such claims out of his own pocket. The auditor's fee was approved by the court below and we see no reason to change it. By striking out the surcharge for loss in operating the plant the fund for distribution will not be sufficient to pay in full all the claims allowed by the auditor as preferred. His allowance of the local taxes levied during the receivership as such is supported by Gehr v. Iron Co., 174 Pa. 430. The expense of the audit, costs of this appeal, and also amount allowed as counsel fees should be paid in full as part of the costs. As the order of court expressly charges the funds in the receiver's hands with payment of the authorized certificates, the claim of the National Bank of Lawrence County thereon should be paid in full out of this fund; and it cannot be turned aside to pay receiver's commissions fixed by a subsequent order of court: See Moore v. Lincoln Park, Etc., Co., 196 Pa. 519; and this is especially true because the receiver disbursed the funds in such manner as to render himself personally liable for the payment of the bank's claim, and cannot share in this fund until that is paid: See Gillespie v. The Blair Glass Co., 189 Pa. 50. No objection seems to be here made to the preference given the claims of Chas. H. Johnson and

H. W. McAteer for balance of salaries. After payment of the special claims above mentioned, the balance of the fund in our opinion should be distributed to the receiver to apply upon his claim for compensation and amount paid watchman; as the court's order charges such claims upon the property, any right the receiver may have to look to the plant for the balance thereof should not be prejudiced. We have referred only to such of the numerous questions presented by the record as seem here important and deem it unnecessary to separately consider the assignments of error.

The decree of the court below confirming the auditor's report, is reversed, the surcharge of the receiver, "To amount of loss in operating plant, $53,651.50," is set aside, and the record is remitted that redistribution may be made in accordance with this opinion, without prejudice to any right the receiver may have against the plant for the balance of his claim under the order of court making it a charge thereon. The costs of this appeal to be paid out of the fund for distribution.