Halpern, Appellant, *v.* Grabosky.

Argued May 27, 1928.   Before Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Harry R. Back,* with him *Michael Serody,* for appellant.—In general, where a party transfers to another

goods, stocks or notes of hand as collateral security for a preëxisting liability, the same are held in trust for the benefit of all parties.

The remedy of the pledgor to redeem is in general at law, but equity will lie on a request for an accounting or other additional grounds of equitable jurisdiction: Conyngham's App., 57 Pa. 474.

As a general proposition, in the absence of express authorization, a corporation cannot transfer all of its property to another corporation for the purpose of enabling the transferee to exercise its powers and control its affairs: Stewart's App., 56 Pa. 413; Com. v. Overholt, 23 Pa. Superior Ct. 199.

*William A. Carr* and *Sidney L. Krauss,* for appellee, were not heard, but urged in brief.—The testimony conclusively shows that the appellant never at any time became entitled to the stock in question: Ashhurst's App., 60 Pa. 290.

OPINION BY MR. JUSTICE KEPHART, January 7, 1929:

Plaintiff's bill was to compel defendant to return stock held as collateral security, to restrain its assignment, and account for all money, securities or other property received by him. The court below found plaintiff and defendant agreed to form a corporation, the G. H. P. Cigar Co., with capital of $15,000, divided into 300 shares. Plaintiff was to subscribe for 90 shares, defendant $172\frac{1}{2}$ shares, and Polleck, the third member, $37\frac{1}{2}$ shares. Defendant was to advance the money plaintiff was to pay, and take his stock as collateral. All dividends were to be paid defendant until they equaled the loan, when the stock was to be given to plaintiff. If the dividends were insufficient to repay his loan or the amount advanced, or, in event of the company's proving unsuccessful, plaintiff was relieved from all liability on account of the debt.

Plaintiff's bill averred defendant had received dividends in excess of the value of the stock, for which he made no accounting, and has refused to turn over the stock. The court below found the G. H. P. Company was incorporated in 1911 and continued until 1912, when it proved to be a financial failure; that it was heavily indebted beyond its possible assets, for merchandise and money borrowed for pay rolls, expenses, etc. During this period, no profits had been earned and no dividends had been paid. In 1912 the company had in good faith sold its assets and all property to another concern, the latter assuming all indebtedness. The bill was dismissed.

Plaintiff contends that his equity in the stock survived the corporate sale and followed the assets of the corporation; that any benefits received by defendant from such assets belonged to him in the proportion his shares bore to the total number. As a foundation for his claim, plaintiff shows the property of the company was sold to the Empire Leaf Tobacco Company, a partnership, in which the defendant, a member of the old company, was interested, with another not a member. The G. H. P. Company was continued in business as a partnership under the same name by the Empire Company, and was composed of the same members as the latter: Montgomery Web Co. v. Dienelt, 133 Pa. 585; Atlas Portland Cement Co. v. American Brick & Clay Co., 280 Pa. 449; Delphia Knitting Mills Co., Inc., v. Richards, 62 Pa. Superior Ct. 9, 12. All debts of the old company were paid by the new company from the receipts of the combined businesses, but no profits were earned during this period. In 1916 a new corporation was formed, enlisting further new capital. This was later dissolved, and in 1924 still another company was formed.

It is difficult to follow appellant's contention, as the old company's assets were mingled with other property. The evidence does not disclose any gauge by which it might be determined what part of the gain, if any, re-

lated to the old company's assets, or what part of such gain, in excess of old liabilities, the old company's assets were responsible for. That the company could sell its assets to another corporation or individual is not disputed. A strictly private corporation, owing no peculiar duties to the public, unless prevented by statute, has the same dominion over its property as an individual: Wolf v. Excelsior Automatic Scale & Supply Co., Inc., 270 Pa. 547, 549; Maxler v. Freeport Bank, 275 Pa. 510, 513; Peoples Trust Co. v. Consumers Ice & Coal Co., 283 Pa. 76, 81; Illoway v. Daly, 65 Pa. Superior Ct. 335, 336. Creditors cannot deny to a corporation the right generally to sell its assets. Where the sale of corporate assets creates a preference, or is made with intent to defraud creditors, their rights are safeguarded in law. Creditors may pursue the assets in the hands of the new company through judgment against the old company (Montgomery Web Co. v. Dienelt, supra; Art Society of Pittsburgh v. Leader Publishing Co., 60 Pa. Superior Ct. 548, 550), or they may by proper proceedings fasten a constructive trust as to such assets on the new company as trustee, with liability to account for such assets (Ashhurst's App., 60 Pa. 290); or the new company may assume payment of the debts, as was done in this case.

It may be true that a nonconsenting stockholder's right may rise higher and be more comprehensive than that of a creditor. But the minority interest of a stockholder cannot prevent a sale, even in a solvent corporation, unless there is fraud or collusion, and this is so though no notice be given to him of such sale. He may delay it for a time, but the important questions to him will be, whether the company is receiving full value for the assets, good will and franchise of the company (Koehler v. St. Mary's Brewing Co., 228 Pa. 648; 14 C. J. 866); and whether these assets, with future prospects of a continued business, are more valuable than their worth as fixed in the proposed sale. Majority

stockholders cannot deliberately take hold of what is apparently a losing venture, and, with figures fixed for its assets under false estimates of value, sell it when they know that in the process of reasonable business management these assets and the business would shortly be much more valuable. The sale is always a question of good faith; the determination of value is through the application of common sense to the thing to be sold. To the value as of the time of sale will be allowed a reasonable estimate for future prospects; particularly is this so when it is demonstrated at the time of hearing that those future values were in time reasonably certain. Where the sale is public, and there is no fraud, with equal opportunity to contending purchasers, value depends on the price bid. Nonconsenting stockholders cannot, however, profit through the employment of new capital and energy, which they themselves did not contribute.

There is no evidence to show the assets were worth more than the estimate. A fair value could have been found for stock and machinery in place. The only uncertain factor was book accounts, but these could have been made reasonably certain. There is no evidence to show they were worth more than the sum for which they were sold. While defendant was among those composing the partnership, the sale was in good faith and for value: 14 C. J. 866; 8 Fletcher, Corporations, section 4011. That new capital was employed to increase the business and make the assets more profitable is not denied. Plaintiff can take no part of this: The business was later moved to a new location, but no profits were made by it; and when it sold all its assets to the new corporation above mentioned, the partnership ceased to exist. The sale of 1912 completely destroyed any value of plaintiff in his stock held as collateral. We need not follow the further history of the company. It did not appear that defendant, as shareholder and pledgee of the stock, participated in any unlawful act or any conduct

that had as its end an overreaching of plaintiff. The sale being lawful, extinguished plaintiff's real equity, and he was, by his agreement of 1911, not entitled to a return of the paper certificate until the advancement was paid through dividends or otherwise.

Decree affirmed, at the cost of appellant.