## Fidelity & Casualty Co. of New York, Appellant, v. American Surety Co. of New York.

Argued October 5, 1933. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John C. Sherriff,* with him *Paul E. Hutchinson,* of *Sherriff, Lindsay, Weis & Hutchinson,* for appellant.

*E. W. Arthur,* with him *James M. Magee,* for appellee, were not heard.

OPINION BY MR. CHIEF JUSTICE FRAZER, November 27, 1933:

Plaintiff appeals from judgment entered in favor of defendant upon the former's petition for declaratory judgment under the Act of June 18, 1923, P. L. 840. The controversy turns upon the question of the respective liabilities of the two companies to the Common-

wealth in their capacity as sureties upon depository bonds covering funds of the Commonwealth on deposit in the Pittsburgh State Bank and in the American State Bank and Trust Company, subsequently consolidated into one bank known as the Pittsburgh-American State Bank and Trust Company.

The undisputed facts are as follows: Plaintiff became surety to the Commonwealth for money on deposit or to be deposited from time to time in the Pittsburgh State Bank in an amount not exceeding thirty thousand dollars and defendant became surety to the Commonwealth for funds on deposit or to be deposited from time to time in the American State Bank and Trust Company in an amount not exceeding sixty-two thousand five hundred dollars. At the time of the consolidation of the two banks (July 22, 1931), the Commonwealth had on deposit in the Pittsburgh State Bank, thirty thousand dollars, of which twenty-three thousand were designated "Motor Registration Fund" and seven thousand "General Fund." On the same date the Commonwealth had on deposit in the American State Bank and Trust Company, sixty-two thousand five hundred dollars under the designation "General Fund." On August 1, 1931, i. e., subsequent to the consolidation, the state treasurer drew a check on the American State Bank and Trust · Company in the amount of $10,000, against the account designated as "General Fund," which check was honored and paid by the new or consolidated bank. On August 11, 1931, a check drawn on the same bank by the state treasurer, was paid by the consolidated bank in the amount of twenty thousand dollars. The consolidated bank was declared insolvent and taken over by the secretary of banking on September 24, 1931, and has been closed since that time. Defendant has paid to the Commonwealth the sum of thirty-two thousand five hundred dollars, plus interest thereon, which was received in full settlement of the liability of that surety. Of the balance still due the Commonwealth, plaintiff has paid $20,-

445.55, plus interest, asserting this payment is a complete discharge of its liability, and that the remainder is payable by defendant. The sum paid by plaintiff represents the proportionate amount payable by that company estimated on the basis of cosuretyship, i. e., 30,000/92,500ths of the total Commonwealth deposit of $62,500 in the hands of the consolidated bank at the time its doors were closed. The problem as to which surety shall pay the balance due the Commonwealth resolves itself merely into a question of whether a condition of co-suretyship exists. If it does not, the judgment of the court below, declaring plaintiff indebted to the Commonwealth in the outstanding amount, must be affirmed.

"The test of cosuretyship is a common liability for the same debt or burden. This liability may arise at the same time or at different times, out of the same writing or out of many writings. A common interest and a common burden alone are required to create the relation, and to enable the cosurety who has paid more than his due proportion to claim contribution from those who have paid less than their just proportion of the common liability": United States Fidelity & Guaranty Co. v. Naylor, 237 Fed. 314, 316. See also 50 C. J. 278. "Where several sureties become bound for the debt, default or miscarriage *of the same principal* with reference to the same transaction, even though they become bound by different instruments they are generally considered cosureties and held liable to contribution": Brandt on Suretyship, section 281, page 552. (Italics ours.) It is clear that, before the consolidation of the two banks for which plaintiff and defendant were respectively surety, there was no relation of cosuretyship between the parties, as there was neither a common burden nor a common principal. Did the merger of the banks alter this relationship? We think not.

The consolidation of the two banks resulting in the new institution already referred to, was accomplished .

pursuant to the provisions of the Act of May 3, 1909, P. L. 408. Sections 1 and 2 prescribe the method to be followed in such cases. Section 3 declares the merger shall be deemed to have taken place upon the issuing of new letters patent by the governor, with the proviso, however, "That all rights of creditors and all liens upon the property of each of said corporations shall continue unimpaired, limited in lien to the property affected by such liens at the time of the creation of the same, and the respective constituent corporations may be deemed to be in existence to preserve the same; and all debts not of record, duties and liabilities of each of said constituent corporations shall thenceforth attach to the said new corporation, and may be enforced against it to the same extent and by the same process as if said debts, duties and liabilities had been contracted by it." Before the consolidation the Commonwealth stood in the position of a creditor of each original bank, with "a sovereign right of priority over all other creditors": South Phila. State Bank's Insolvency, 295 Pa. 433, 439. After the merger, it remained a preferred creditor, with the right to pursue the property of each constituent corporation to the extent of its liability. The obligations of the sureties were fixed by their separate contracts before the merger and could be neither increased nor diminished by the agreement of consolidation to which they were not parties. As stated by the court below: "While the merger generally worked the extinction of the corporate existence of each of the antecedent constituent banks, we think the legal existence of each constituent bank was in effect continued for settlement of liabilities as provided by the act of assembly......" The obligations to the Commonwealth remained separate and distinct and there was consequently no merger of liability upon the part of the sureties giving rise to cosuretyship.

In addition, it should be noted that the two checks, in the amounts of ten and twenty thousand dollars respectively, paid after the consolidation, were drawn upon the

account designated "General Fund." At the time of the merger there was only seven thousand dollars in the Pittsburgh State Bank designated "General Fund," accordingly it is clear that the Commonwealth must have been paid with funds coming from the American State Bank and Trust Company. These payments consequently reduced the liability of defendant to thirty-two thousand five hundred dollars, which has been paid, together with interest thereon. The balance remains due and owing from appellant according to the terms of its bond.

The judgment is affirmed at appellant's cost.