## Seaton's Estate.

Argued September 30, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Herman M. Buck*, with him *Jos. W. Ray, Jr.*, of *Shelby, Ray & Coldren*, for appellants.

*D. W. McDonald, Jr.*, with him *M. B. McDonald*, of *McDonald, Cray & McDonald*, for appellee.

OPINION BY MR. JUSTICE DREW, November 12, 1937:

This is an appeal from the decree of the court below dismissing exceptions to its adjudication confirming the second and partial account of the executors of the estate of Charles H. Seaton, and directing a conveyance. The exceptions alleged that the executors had failed to recognize a claim of $10,000 due appellants as executrices of the will of Emily J. Gilmore.

On October 12, 1914, Josiah V. Thompson gave Charles H. Seaton, a mortgage on an undivided interest in 1,000 acres of coal land in Greene County, Pennsylvania, said mortgage being for the principal sum of $97,000 payable in one year with interest at six per cent.

As is shown by a certain agreement, an exhibit in the case, this mortgage was given to secure certain indebtednesses of Thompson, to Seaton $22,000, to the National Bank of Fayette County $65,000, and two other notes of $5,000 each (not otherwise identified), on which Seaton was liable as surety for Thompson.

Upon the death of Seaton, September 30, 1924, the said mortgage came into the possession of his executors, appellees, together with other personal property of decedent. On February 14, 1927, the mortgage being in default as to principal, interest and taxes, the executors started foreclosure proceedings; the property was sold to them upon their bid of $125,000, and on June 25, 1927, the sheriff made a deed to them as executors. They immediately conveyed an undivided $65/97$ interest in the land to the National Bank of Fayette County, and received in return a proportionate amount of what had been expended for costs of sale and taxes, which sum appears in the second account of the executors. The remaining $32/97$ interest in the premises is still held by the executors. They have not accounted for it as an asset of the estate, but have paid the taxes upon it.

Four years after Seaton's death, two years after the confirmation of the first account of his executors, and a year and a half after the foreclosure, appellants first made themselves known and presented a claim against the estate. They appeared first on December 14, 1928, almost three years after the confirmation of the first account of the executors, when they filed the present exceptions to the second account. It does not appear that the appellees, prior to that time, had any knowledge of appellants' claim or knew anything of the ownership of the two unidentified notes, mentioned in the agreement.

The lower court, after hearings before the auditing judge, filed an opinion and entered a decree refusing to award the money demanded but directed the executors to make a conveyance to appellants of their respective proportionate interest in the coal lands, they to bear, in

similar proportion, a share of the costs and carrying expenses incurred by the Seaton estate. We think this conclusion eminently fair. It gave appellants exactly what the other interests in the mortgage and agreement received.

Appellants' theory is that the Seaton executors, in their representative capacity, converted and appropriated their interest in the mortgage, and for the benefit of the Seaton estate. They claim they may now elect to press a claim for the amount of the notes, $10,000, in cash. There is no merit in the contention. There was no conversion, no appropriation, no benefit to the estate. There was never a thought by appellees to deprive appellants of anything, and appellants have not been deprived of anything; their security in no event could rise higher than the premises mortgaged; by the decree of the court below they are given exactly that to which they were originally entitled, a proportionate vested interest in the premises, thus completely exhausting the security itself by any theory of the case. The notes themselves having been lost, the appellants attempted to establish them by parol evidence, and the lower court gave them the benefit of all doubts, but since the statute of limitations has intervened, there can be no recovery from the Seaton estate based on the alleged endorsement.

For all that appears, the mortgage ran to Seaton absolutely. No complaint can be lodged against his executors for taking title on foreclosure in the same way. The identity of the obligee, and the content of the notes, were not established until testimony was taken in this very proceeding. It was clearly impossible for the executors to recognize appellants' claim before it was known.

We have no doubt the case has been correctly determined. The executors have done nothing wrong. Since the mortgage, as appears from the agreement, was to secure the debt itself, there is no question but that decedent was in legal effect a trustee: *Kramer & Rahm's*

*Appeal,* 37 Pa. 71; *Jack v. Morrison,* 48 Pa. 113; see, Williams, A Creditor's Right to his Surety's Securities, 1 Harvard Law Review 326. But he was a trustee by implication; there was no express trust; the trust was implied from the relationship of the parties in the agreement to each other because of their separate interests in the mortgage. Hence, appellants could not expect decedent's executors to create an express trust—one never in the contemplation of the parties to the agreement and mortgage. The executors did their full duty, when, to protect the security, they foreclosed the mortgage, and took title as Seaton had held it. No possible loss could result from their action. They took what they received from their decedent and held it exactly as he had. Consequently the cases which condemn the action of an express trustee who takes conveyance on foreclosure in his own name *(Quest's Estate,* 324 Pa. 230; *Yost's Estate,* 316 Pa. 463; *Freas's Estate,* 231 Pa. 256) are not applicable.

It is significant that appellants do not contend that a loss has been sustained. Their effort is to obtain cash from a solvent estate instead of accepting an interest in coal lands of doubtful value.

Decree affirmed at appellants' cost.