## Austin et al. v. City Stores Company (No. 2)

*Edmonds, Obermayer & Rebmann,* for plaintiffs.

*Sundheim, Folz, Kamsler & Goodis,* for defendants.

ALESSANDRONI, J., April 8, 1954.—Petitioners have filed a petition and rule for the allowance of interest on the award of the appraisers of the dissenting shares of Lit Brothers. Lit Brothers merged into City Stores, effective March 31, 1951. The dissenting shareholders then proceeded under the provisions of section 908 of the Business Corporation Law of May 5, 1933, P. L. 364, as amended, 15 PS §2852-908. This section provides for the appointment of appraisers to fix the fair value of the dissenting shares. The proceedings were perfected; after extensive hearings the appraisers filed their report and recommended an award;

exceptions to the award were filed by both parties, and heard; this court confirmed the award of the appraisers of $16.50 per share as the fair value thereof.

After the award of the appraisers but before the court's decision, petitioners filed a petition and rule for interest on the fair value of their shares from the effective date of the merger, i.e., March 31, 1951, at the rate of six percent per annum. City Stores, defendant, filed an answer challenging the authority of this court to award interest in these proceedings.

For present purposes, the facts of this matter are undisputed. On February 20, 1951, the shareholders of Lit Brothers voted to merge with and into City Stores. Petitioners, a small minority, dissented from the merger; thereafter, being unable to agree with City Stores on the "fair value" of their shares, petitioners perfected the proceedings necessary for the appointment of appraisers. The appraisers, in November 1952, found the fair value to be $16.50 per share; both petitioners and respondent filed exceptions. In November 1953 this court confirmed the award of the appraisers; under the controlling language of the statute this determination was final and conclusive.

Petitioners concede that the statute is silent as to interest on the award, but argue from analogous decisions and what they have termed the "more enlightened and progressive view" that interest should be given. They also advance as an additional reason that simple justice requires interest, since respondent has had the use of the money during the period in which the fair value was being litigated. They further argue that their view toward interest is the correct one and was in the contemplation of the General Assembly because the General Assembly denominated the proceedings as being "in equity".

Section 908 of the Act of 1933, P. L. 364, as amended, 15 PS §2852-908, provides, inter alia:

"The *award* of the appraisers . . . shall be submitted to the court for determination, and the judgment of the court thereon shall be final and conclusive. . . . If the *award* shall not be paid . . . within 30 days after the order of the court . . . the amount of the *award* shall be a judgment . . . and may be collected as other judgments in such court are by law collectible . . .". (Italics supplied.)

The language of the statute is unmistakable, there is no provision for interest; it does, however, provide for the assessment of costs.

The language of the statute is incapable of a construction awarding interest. The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, provides:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Petitioners' request to apply what is denominated the "more enlightened and progressive view" might very well be termed "pursuing the (alleged) spirit of the law". The fact that jurisdiction is "in equity" would appear to add nothing to petitioners' claim. If "in equity" carries interest with the award, gist of petitioners' argument must be that it was unnecessary to make a provision for interest explicit. Nothing in the statute supports petitioners' proposition.

It is crystal clear that the act of merger of two corporations, in which some of the shares dissent, is not, as to the dissenters, a tort or other legal wrong. If merger was considered either as a tort, or as some other legal wrong, then any time some shareholders dissented to a merger, the new or surviving corporation, as will be hereinafter indicated, might be well-advised to pay the demand no matter how outrageous. However, the dissenter is under no statutory compulsion to decide whether he will take the offer of the

corporation or proceed under the statute to determine fair value.

Indeed, if this respondent had acceded to petitioners' demands, it would have been guilty of the dissipation of corporate assets by gross overpayment for the shares. The demand for interest based on the award might well be considered a method of obtaining a larger share of corporate assets by such proceedings than the dissenters are actually entitled to receive. That is to say, if interest ran while the proceedings to determine fair value were undertaken, which by their very nature are extended, because of the difficulty of the concept to be evaluated, the dissenters could gain much by merely threatening such procedure. Interest at six percent would then run, regardless of earnings, to the loss of the vast majority of shareholders.

The Supreme Court of Appeals of Virginia was most eloquent on the issues advanced by petitioners, in construing a statute substantially similar to our statute, in The Pittston Co. v. O'Hara, 191 Va. 886, 900, 901:

"This Court is not concerned with whether a dissenting stockholder, as a matter or 'simple justice' or under equitable principles, is entitled to interest on the fair cash value of his stock from the effective date of the merger. It is for the legislature and not for the courts to say upon what terms the consolidated or merged corporation should settle its differences with a dissenting stockholder. Our function is to construe the statute as written."

None of the cases from this Commonwealth cited by petitioners supports their proposition that simple justice and equity require that they be awarded interest. In Petry et al. v. Harwood Electric Co. (No. 1), 280 Pa. 142, the decree of the court below awarded interest from the effective date of the merger. However, the facts of that case distinguish the decision

from the present matter and the decision is therefore inapposite. There, preferred shareholders' rights were seriously damaged by the financial machinations of the common shareholders. The court awarded interest, not because there was a merger and petitioners dissented and thereafter instituted valuation proceedings, but rather because the preferred shareholders were deprived of contract rights granted them by the shares themselves. Defendant corporation refused to pay for the preferred shares at their par value plus accumulated dividends; the latter were due and owing but had never been paid because of a deliberate financial structure designed to avoid payment. The court held that under the facts the preferred shareholders were to be treated as though the corporation was being dissolved and were entitled to all their contract rights under the circumstances. Thus, it must be noted that the award of the court below, here affirmed, did not rest on any theory of equitable principle, but on the solid foundation of an express contract.

In Nice Ball Bearing Co. v. Mortgage Building & Loan Association, 310 Pa. 560, plaintiff was the holder of a number of shares of a building and loan association, and had given notice of its intention to withdraw from the association. Before sufficient time elapsed to make the notice binding, the association, along with six other associations, merged into present defendant, Mortgage Building and Loan Association. Plaintiff then sued at law to recover the "real actual value" of its shares. It is significant that the merger agreement setting forth the amount allowed the withdrawing shareholders of the merging associations included one and one-half percent simple interest. Therefore, this case obviously does not stand for petitioners' proposition of the requirements of simple justice and equity.

Mortgage Building and Loan Assn. Case, 334 Pa. 81, is in the nature of a sequel to the above case. The record establishes that interest was to be allowed to the dissenting shareholders of the merger hereinbefore mentioned because the merger agreement provided for such interest. Petitioners in the present case concede that the controlling statute does not provide for interest. It is significant that the Act of May 3, 1909, P. L. 408, 15 PS §421 et seq., which governed the two cases cited above, has language with reference to dissenting shareholders substantially similar to that of the present statute. In the above case, it was also a fact, that the dissenters did not get actual value, but rather obtained a merger value, based not on money paid in, but on assets available for payment, under the terms of the merger agreement.

Of course, as expressly provided in the statute, the Nice Ball Bearing Company's judgment carried interest just as any other judgment would. The present statute contains an identical provision, i.e., if award is not paid within 30 days, the award becomes a judgment and is collectible in the same manner as any other judgment.

Petitioners cited Skipworth v. Federal Water and Gas Corp., 56 N. Y. S. 2d, 804, for the proposition that principles of equity and justice require interest to be paid. In that case the New York Supreme Court there construed the Delaware statute, and declared that the above principles permitted interest on the award under the statute; the statute contained no express provision for interest. However, the persuasiveness of the decision was completely destroyed by the construction of the same statute by the Supreme Court of Delaware in Meade v. Pacific Gamble Robinson Co., 30 Del. Ch. 509, which repudiated the decision of the New York court. Petitioners concede that both

New York and Delaware have expressly amended their statutes to alllow interest.

Petitioners, in the face of the foregoing decisions, nonetheless ask this court to construe the statute to permit interest, and thereby do violence to its plain meaning. If the courts of our sister States found it impossible to do so, how can we legislate in the name of "simple justice and equity"? The inescapable conclusion is that, if it is an inequity, the General Assembly, not the court, must correct it.

However, passing beyond that, we entertain grave doubt as to the propriety of permitting interest on the entire amount, even if we assumed that "simple justice and equity" required the award of interest. In this case, prior to the "fair value" proceedings, respondent offered the dissenters $15 per share; the petitioners demanded payment of $22.50. Assuming that it can be said that respondents ought to pay interest in some amount, should not that interest be limited to the difference between the amount offered by respondent and the amount awarded. Suppose the award of the appraisers had been only $13 per share; petitioners would have been completely annihilated; would they then be entitled to interest on the award? We deem the fact that respondent retained the money to be meaningless. The retention of the money was not a tort or other legal wrong; the act was in strict accord with the statute. Therefore, interest, if any, ought to be limited to the difference between the offer of respondent and the award, if we were applying principles of equity and simple justice instead of the law, that would be our conception of the proper application of the principles that petitioners assert.

The entire procedure is prescribed by the statute, and the controlling provisions of our statute are clear and unambiguous; any construction that permitted the payment of interest on the award prior to entry of

82

judgment, 30 days after the award of the court, would do violence to the plain meaning of the statute. Regardless of allegations and allusions to what is termed the "more enlightened and progressive view", we must not usurp the prerogative of the General Assembly. The law is plain, the facts are clear, the conclusion is inescapable.

*Order*

And now, to wit, April 8, 1954, petitioners' rule for the allowance of interest from March 31, 1951, to December 28, 1953, is hereby discharged.